**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PHYLLIS C. WELLS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DUNKIN' BRANDS, INC. and INSPIRE BRANDS, INC.,<br><br>Defendants. | Civil Action No. 1:26-cv-__________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Phyllis C. Wells ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants Dunkin' Brands, Inc. and Inspire Brands, Inc. (collectively, "Dunkin'" or "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of herself and all similarly situated consumers who purchased Dunkin' Zero beverages, which Defendants market and sell as containing "0g of sugar" and "zero sugar" (collectively, the "Products").[1]

2. Defendants repeatedly market and advertise the Products as "zero-sugar" energy drinks that contain "0g of sugar" and "zero grams of sugar" (the "Zero Sugar Representations").

[1] The Products are comprised of every beverage sold under the Dunkin' Zero name, including the Blackberry Tangerine, Tropical Mango, Juicy Peach, Glamberry (Blackberry Tangerine + Juicy Peach), Sunzest (Tropical Mango + Juicy Peach), and Blushpop (Blackberry Tangerine + Tropical Mango) varieties introduced on March 4, 2026, and the Watermelon Lime, Splashberry, Heatwave, and Melon Paradise varieties added thereafter, in all sizes. *See* Dunkin', *Dunkin' Zero*, https://www.dunkindonuts.com/menu/categories/iced-refreshers-specialty-tea/specialty/dunkin-zero/ (last visited Sept. 23, 2026); Dunkin', *Allergen and Ingredient Guide* (Aug. 19, 2026) ("Ingredient Guide"), https://www.dunkindonuts.com/nutrition/ (last visited Sept. 23, 2026). Discovery may reveal that additional products of Defendants are within the scope of Plaintiff's Complaint. Accordingly, Plaintiff reserves the right to amend her Complaint to add additional products of Defendants.

However, unbeknownst to reasonable consumers, Defendants sweeten the Products with allulose. Allulose is a monosaccharide and therefore a sugar under the applicable federal labeling standards, which Illinois and Massachusetts law incorporate. It is not present in trace amounts: each medium Product contains approximately 9 grams of allulose, and each large Product contains approximately 11 to 13 grams of allulose.

3. The Zero Sugar Representations are express nutrient content claims under 21 C.F.R. § 101.13(b) and (b)(1). "Zero sugar" is among the terms expressly defined by 21 C.F.R. § 101.60(c)(1), and "0g of sugar" and "zero grams of sugar" are reasonable variations or synonyms of that term. 21 C.F.R. § 101.13(b)(4). Section 101.60(c)(1) permits such a claim only if, among other things, the food contains less than 0.5 grams of sugars, as defined in 21 C.F.R. § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving, and contains no ingredient that is a sugar unless that ingredient is followed by an asterisk disclosing that it adds only a trivial amount of sugar. Defendants nevertheless add approximately 9 grams of allulose to each medium Product and 11 to 13 grams of allulose to each large Product and make no such disclosure. The governing federal standards are 21 U.S.C. § 343(a)(1), (r)(1)(A), (r)(2)(A)(i); 21 C.F.R. §§ 101.9(c)(6)(ii), (c)(6)(iii), 101.13(b), (b)(1), (c), and (q)(5), and 101.60(a)(1)–(3), (c)(1).[2]

4. Apart from any regulation, Defendants' Zero Sugar Representations are also deceptive by their nature. A reasonable consumer who is told that a beverage contains "0g of sugar" understands that the beverage contains no sugar. A beverage sweetened with approximately 9 to 13 grams of a monosaccharide, i.e., a sugar, does not.

[2]The governing state law provisions, discussed *infra*, impose identical requirements to the federal standards and are thereby not preempted. 21 U.S.C. § 343-1(a)(5); *Franco v. Chobani, LLC*, 184 F.4th 599, 606 (7th Cir. 2026), *rev'g* 789 F. Supp. 3d 584 (N.D. Ill. 2025). ("The Francos want to hold Chobani liable under state law for violating identical [food labeling] standards, and so their claims are not preempted.").

5. Defendants make and disseminate the Zero Sugar Representations from Dunkin' Brands, Inc.'s headquarters in Canton, Massachusetts, where Defendants develop, formulate, name, and market the Products and dictate the uniform menu boards, signage, websites, mobile ordering content, and advertising used by every one of the approximately 10,000 Dunkin' restaurants in the United States.

6. Plaintiff Phyllis C. Wells is a citizen of Illinois residing in Chicago, Illinois, who has purchased Dunkin' Zero beverages for her personal use approximately two to three times per week at a drive-through Dunkin' restaurant in Chicago, Illinois. Accordingly, Plaintiff brings claims against Defendants for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), on behalf of an Illinois Subclass; and for breach of express warranty under Mass. Gen. Laws ch. 106, §§ 2-313 and 2-318, negligent misrepresentation, and unjust enrichment on behalf of a Nationwide Class.[3]

**<u>JURISDICTION AND VENUE</u>**

7. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because the proposed Classes include more than 100 members, the aggregate claims of the proposed Classes exceed $5,000,000, exclusive of interest and costs, and at least one member of the proposed Classes, including Plaintiff, is a citizen of a state different from Defendants. Dunkin' Zero beverages are sold at approximately 10,000 Dunkin' restaurants throughout the United States, and the Products have been sold to many hundreds of thousands of consumers since their introduction on March 4, 2026.

8. This Court has general personal jurisdiction over Defendant Dunkin' Brands, Inc. because it maintains its principal place of business at 130 Royall Street, Canton, Massachusetts,

[3] Plaintiff intends to amend this Complaint to assert a claim under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, upon the expiration of the presuit notice period.

within this District, and is therefore at home in this Commonwealth. This Court also has specific personal jurisdiction over Dunkin' Brands, Inc. because Plaintiff's claims arise out of and relate to conduct it undertook in Massachusetts, including the formulation and naming of the Products and the creation, approval, and dissemination of the Zero Sugar Representations. This Court also has specific personal jurisdiction over Defendant Inspire Brands, Inc. because it purposefully directs the Dunkin' brand's marketing, advertising, and menu development through Dunkin' Brands, Inc.'s Canton, Massachusetts headquarters, issued the Zero Sugar Representations at issue from Boston, Massachusetts, and derives substantial revenue from the sale of the Products in Massachusetts, such that Plaintiff's claims arise out of and relate to its contacts with this Commonwealth.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(2) because Defendant Dunkin' Brands, Inc. resides in this District and a substantial part of the events giving rise to Plaintiff's claims, including the design, approval, and dissemination of the Zero Sugar Representations, occurred in this District. Pursuant to Local Rule 40.1(d)(1)(C), this action is properly assigned to the Eastern Division because the only party residing in this District, Dunkin' Brands, Inc., resides in Norfolk County.

## PARTIES

10. Plaintiff Phyllis C. Wells is a citizen of Illinois residing in Chicago, Illinois. Since Dunkin' introduced the Products on March 4, 2026, Plaintiff has purchased Dunkin' Zero beverages for her personal use approximately two to three times per week at the drive-through of the Dunkin' restaurant designated Dunkin' #362706 in Chicago, Illinois, including on or about March 25, April 2, May 22, August 7, August 18, August 29, September 4, and September 8,

2026. Plaintiff paid for each purchase with her payment card and has retained her card statements reflecting those purchases.

11. Plaintiff seeks to limit her sugar intake and, for that reason, tries to purchase only beverages that are marketed as sugar-free or zero sugar. Before each purchase, Plaintiff saw and relied on Defendants' prominent representations, on Dunkin's drive-through menu boards and signage and in Dunkin's advertising, that the Products are "Dunkin' Zero," "zero sugar" beverages containing "0g of sugar." Based on those representations, Plaintiff reasonably believed that the Products contained no sugar. The Zero Sugar Representations were part of the basis of Plaintiff's bargain, and she would not have purchased the Products on the same terms had she known they were untrue. Plaintiff also paid a price premium because of Defendants' false and misleading Zero Sugar Representations but did not receive the benefit of her bargain because each Product contains approximately 9 grams or more of allulose, a sugar. Had Plaintiff known the truth, she would not have purchased the Products or would have paid substantially less for them.

12. Plaintiff remains interested in purchasing beverages that truly contain no sugar, including from Dunkin'. However, she cannot know for certain whether Defendants' false labeling and marketing have been or will be corrected, and the Products' composition may change over time. If Defendants continue to make the Zero Sugar Representations, Plaintiff will be unable to make informed purchasing decisions and is likely to be misled again unless Defendants are required to ensure that the Products' marketing is accurate. Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food and beverage products. Neither Plaintiff nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

13. Defendant Dunkin' Brands, Inc. is a Delaware corporation with its principal place of business at 130 Royall Street, Canton, Massachusetts 02021. Dunkin' Brands, Inc. owns, operates, and franchises the Dunkin' brand in the United States; develops and formulates the beverages sold under the Dunkin' name, including the Products; and creates, approves, and disseminates the menu boards, signage, websites, mobile ordering content, press releases, and advertising through which the Products are marketed and sold at Dunkin' restaurants throughout the United States, including in Massachusetts and Illinois. Dunkin' Brands, Inc. operates the dunkindonuts.com website on which the Zero Sugar Representations appear and is the entity that Dunkin' identifies to consumers as the provider of its programs and online services. Defendant Inspire Brands, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia. Inspire Brands, Inc. acquired Dunkin' Brands Group, Inc. and its subsidiaries, including Dunkin' Brands, Inc., in December 2020, and since that time has owned, controlled, and directed the Dunkin' brand. Inspire Brands, Inc. participates in and approves the formulation, naming, advertising, marketing, and sale of the Products, and issued the press releases announcing and describing the Products as “zero-sugar” energy drinks.

14. Defendants act directly and through their parents, subsidiaries, affiliates, agents, and franchisees, including their affiliates Dunkin' Donuts Franchising LLC, Dunkin' Donuts LLC, and DD IP Holder LLC, and the franchisees that operate Dunkin' restaurants under Defendants' uniform brand, menu, and marketing standards. At all relevant times, Defendants controlled and approved the formulation, naming, labeling, advertising, and marketing of the Products, and the acts of Defendants' parents, subsidiaries, affiliates, agents, and franchisees in marketing and selling the Products as alleged herein were undertaken at Defendants' direction

and on Defendants' behalf. Plaintiff reserves the right to amend this Complaint to name additional parent, subsidiary, or affiliated entities as discovery may warrant.

15. Defendants formulate, name, market, advertise, distribute, and sell the Products, directly and through franchised Dunkin' restaurants operating under Defendants' uniform menu, brand, and marketing standards, throughout the United States, including in this District.

## FACTUAL ALLEGATIONS

### A. Consumers Seek Out and Pay More for Products That Contain No Sugar

16. Consumer demand for products without sugar is well documented. A 2022 nationwide survey found that 73% of Americans ages 18 to 80 reported trying to limit or avoid sugar.[4]

17. That demand accords with widespread public-health guidance. The 2025–2030 Dietary Guidelines for Americans state that no amount of added sugars is recommended or considered part of a healthy or nutritious diet and that one meal should contain no more than 10 grams of added sugars.[5] The World Health Organization recommends limiting free sugars to less than 10 percent of total daily energy intake and states that limiting them further to 5 percent or less may provide additional health benefits.[6] The American Heart Association recommends limiting added sugars to no more than 6 percent of daily calories.[7]

18. Sweetened beverages are the leading source of added sugars in the American diet, and consumers who seek to limit their sugar intake pay particular attention to sugar claims on

---

[4]International Food Information Council, *2022 Food & Health Survey* 57 (May 18, 2022), https://ific.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf (last visited Sept. 23, 2026).

[5]U.S. Department of Health and Human Services & U.S. Department of Agriculture, *Dietary Guidelines for Americans, 2025–2030*, at 4 (Jan. 2026), https://cdn.realfood.gov/DGA.pdf (last visited Sept. 23, 2026).

[6]World Health Organization, *Healthy Diet* (Jan. 26, 2026), https://www.who.int/news-room/fact-sheets/detail/healthy-diet (last visited Sept. 23, 2026).

[7]American Heart Association, *Added Sugars*, https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars (last visited Sept. 23, 2026).

beverages. Food and beverage companies are aware of this demand and of the premium consumers will pay to satisfy it. Beverages labeled “zero sugar,” “sugar free,” and “0g sugar” command higher prices than, and take sales from, comparable beverages that do not bear those claims, and companies reserve their most prominent marketing real estate—including product names, menu boards, and headline advertising—for the claims they believe will most motivate a purchase.

19. Defendants have capitalized on that demand. They named the Products “Dunkin' Zero,” launched them as “zero-sugar” energy drinks, and sell them containing allulose—an added monosaccharide sugar—while representing that they contain “0g of sugar.” Defendants thereby obtained an unfair competitive advantage over competitors that accurately label comparable beverages.

**B. Defendants' Zero Sugar Representations**

20. Defendants introduced the Products nationally on March 4, 2026. Dunkin's press release, datelined “BOSTON,” announced: “Dunkin'® Introduces Dunkin' Zero, A Zero-Sugar Energy Drink Made for Everyday Momentum.” It stated that “the brand introduces Dunkin' Zero, a zero-sugar energy drink made for the in-between moments of the day,” that “Dunkin' Zero delivers 20 calories in a medium and zero grams of sugar,” and, under the heading “Meet Dunkin' Zero: Six Flavors. Zero Sugar. All-Day Energy,” quoted Dunkin's chief marketing officer describing the Products as “zero sugar energy that delivers bold flavor without compromise.”[8]

---

[8] Dunkin', *Dunkin'® Introduces Dunkin' Zero, A Zero-Sugar Energy Drink Made for Everyday Momentum* (Mar. 4, 2026), https://news.dunkindonuts.com/news/spring-2026 (last visited Sept. 23, 2026).

News Releases > What's New > March 04, 2026

# DUNKIN'® INTRODUCES DUNKIN' ZERO, A ZERO-SUGAR ENERGY DRINK MADE FOR EVERYDAY MOMENTUM

*New Dunkin' Zero debuts alongside craveable banana-inspired sips, an all-new Berry Acai Refresher and the return of the $6 Meal Deal*

**BOSTON (March 4, 2026)** – Dunkin' is bringing a new kind of energy to the menu. Starting today, the brand introduces **Dunkin' Zero**, a zero-sugar energy drink made for the in-between moments of the day, when coffee has done its job but the day is far from over.

Available in six bold, fruit-forward flavors, Dunkin' Zero delivers 20 calories in a medium and zero grams of sugar. It's a crisp, lightly carbonated sip made for moments when guests want to reset and keep moving. For many, Dunkin' is how the morning starts. Dunkin' Zero picks it up from there, keeping the day going between meetings, on the go, in the carpool line – and into whatever comes next.

**Meet Dunkin' Zero: Six Flavors. Zero Sugar. All-Day Energy**

*Dunkin' press release, March 4, 2026 (news.dunkindonuts.com)*

21. Defendants' website repeats the representation for the Product line and for every individual variety. The Dunkin' Zero menu page states: "Available in six flavors, Dunkin' Zero is packed with delicious flavor with 0g of sugar, 145mg of caffeine, and 20 calories in a medium."




*Dunkin' Zero menu page, dunkindonuts.com (captured Sept. 23, 2026)*

22. Each variety's page carries the same claim. For example, the Blackberry Tangerine Dunkin' Zero page states that the Product is "packed with delicious flavors of blackberry and tangerine - with 0g of sugar, 145mg of caffeine, and 20 calories in a medium."[9]

---

[9] Dunkin', *Blackberry Tangerine Dunkin' Zero*, https://www.dunkindonuts.com/menu/categories/refreshing-sips/blackberry-tangerine-dunkin-zero/ (last visited Sept. 23, 2026). The webpage for each Dunkin' Zero variety contains the same "0g of sugar" representation.




*Blackberry Tangerine Dunkin' Zero menu page, dunkindonuts.com (captured Sept. 23, 2026)*

23. Defendants' blog, social media, in-restaurant and drive-through menu boards, and promotional materials likewise describe the Products as “zero sugar” and as containing “0 sugar” or “0g of sugar,” and Defendants promote the Products under the “Dunkin' Zero” name, which itself communicates that the Products contain zero sugar.[10] Representative promotional imagery is shown below:

[10]Dunkin', *Keep Your Day Moving with Dunkin'® Zero* (Mar. 11, 2026), https://news.dunkindonuts.com/blog/dunkin-zero-2026 (last visited Sept. 23, 2026).




*Dunkin' Zero promotional image*

24. The Zero Sugar Representations communicate to reasonable consumers that no sugar is present in the Products. That is the plain and ordinary meaning of "zero sugar" and "0g of sugar."

25. However, these representations are false. Defendants' own Allergen and Ingredient Guide discloses that every Dunkin' Zero beverage consists of sparkling water and one or more flavored syrups whose first ingredient after water is allulose. For example, the Ingredient Guide lists the ingredients of the Blackberry Tangerine Dunkin' Zero as: "Sparkling Water; Blackberry Tango Energy Zero Sugar Flavored Syrup: Water, Allulose, Contains 2% or less of: Natural Flavors, Citric Acid, Guarana Seed Blend (Maltodextrin, Guarana Seed Extract, Caffeine), Taurine, Sodium Citrate, Fruit & Vegetable Juice (Color), Potassium Sorbate (Preservative), Steviol Glycosides, Xanthan Gum, Vitamin/Mineral Blend . . . ."[11]

[11] Ingredient Guide, *supra* note 1, at 23–27. The Ingredient Guide is published by Dunkin' at https://www.dunkindonuts.com/nutrition/ (last visited Sept. 23, 2026) and is the written ingredient information Dunkin' makes available to consumers for the Products.

| | |
|---|---|
| **PRODUCT NAME** | Blackberry Tangerine Dunkin' Zero - Large |
| **CATEGORY** | Dunkin' Zero Beverages |
| **FLAVOR** | Blackberry |
| **INGREDIENTS** | Sparkling Water; Blackberry Tango Energy Zero Sugar Flavored Syrup: Water, Allulose, Contains 2% or less of: Natural Flavors, Citric Acid, Guarana Seed Blend (Maltodextrin, Guarana Seed Extract, Caffeine), Taurine, Sodium Citrate, Fruit & Vegetable Juice (Color), Potassium Sorbate (Preservative), Steviol Glycosides, Xanthan Gum, Vitamin/Mineral Blend (Pyridoxine Hydrochloride, Cyanocobalamin, Calcium D-pantothenate, Niacinamide Manganese Citrate, Zinc Sulfate, Maltodextrin). |
| **ALLERGENS** | |

*Dunkin' Allergen and Ingredient Guide (Aug. 19, 2026), at 23*

26. The Tropical Mango Dunkin' Zero is made with "Tropical Tsunami Flavored Syrup: Water, Allulose, Natural Flavors, Contains 2% or less of: . . . ." The Juicy Peach Dunkin' Zero is made with "Peach Energy Zero Flavored Syrup: Water, Allulose, Contains 2% or less of: . . . ." The Glamberry, Sunzest, and Blushpop Products combine two of these syrups, each of which begins "Water, Allulose." The Watermelon Lime, Splashberry, Heatwave, and Melon Paradise Products are formulated the same way. In every Product, allulose is the principal sweetener and the only ingredient present in more than trace amounts other than water.

27. Defendants' Nutrition Guide confirms the quantity of allulose. It declares that a medium Blackberry Tangerine Dunkin' Zero contains 9 grams of Total Carbohydrate, 1 gram of Dietary Fiber, and 20 calories, and that a large contains 12 grams of Total Carbohydrate and 25 calories; the other varieties are declared at 8 to 13 grams of Total Carbohydrate depending on size and flavor.[12] Because allulose is the only carbohydrate-contributing ingredient present in more than trace amounts, substantially all of the declared carbohydrate is allulose. On information and belief, each medium Product contains approximately 8 to 10 grams of allulose, and each large Product contains approximately 11 to 13 grams. Yet the same Nutrition Guide declares "0" grams of Total Sugars and "0" grams of Added Sugars for every Product:

[12] Dunkin', *Nutrition Guide* (Aug. 19, 2026) ("Nutrition Guide"), at 7–8, https://www.dunkindonuts.com/nutrition/ (last visited Sept. 23, 2026).

| unkin' Zero Beverages | Serving Size | Calories | Total Fat (g) | Saturated Fat (g | Trans Fat (g) | Cholesterol (mg) | Sodium (mg) | Total Carb (g) | Dietary Fiber (g) | Total Sugars (g) | Added Sugars (g | Protein (g) | Vitamin D (mcg) | Potassium (mg) | Calcium (mg) | Iron (mg) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| lackberry Tangerine Dunkin' ero - Large | Large | 25 | 0 | 0 | 0 | 0 | 250 | 12 | 1 | 0 | 0 | 0 | 0 | 46 | 10 | 0 |
| lackberry Tangerine Dunkin' ero - Medium | Medium | 20 | 0 | 0 | 0 | 0 | 190 | 9 | 1 | 0 | 0 | 0 | 0 | 34 | 7 | 0 |
| lackberry Tangerine Dunkin' ero - Small | Small | 10 | 0 | 0 | 0 | 0 | 125 | 6 | 1 | 0 | 0 | 0 | 0 | 23 | 5 | 0 |
| lushpop Dunkin' Zero - Large | Large | 25 | 0 | 0 | 0 | 0 | 250 | 12 | 0 | 0 | 0 | 0 | 0 | 46 | 10 | 0 |
| lushpop Dunkin' Zero - Medium | Medium | 20 | 0 | 0 | 0 | 0 | 190 | 9 | 0 | 0 | 0 | 0 | 0 | 34 | 7 | 0 |
| lushpop Dunkin' Zero - Small | Small | 15 | 0 | 0 | 0 | 0 | 125 | 6 | 0 | 0 | 0 | 0 | 0 | 23 | 5 | 0 |
| lamberry Dunkin' Zero - Large | Large | 25 | 0 | 0 | 0 | 0 | 250 | 12 | 1 | 0 | 0 | 0 | 0 | 46 | 10 | 0 |
| lamberry Dunkin' Zero - ledium | Medium | 20 | 0 | 0 | 0 | 0 | 190 | 9 | 1 | 0 | 0 | 0 | 0 | 34 | 7 | 0 |
| lamberry Dunkin' Zero - Small | Small | 10 | 0 | 0 | 0 | 0 | 125 | 6 | 1 | 0 | 0 | 0 | 0 | 23 | 5 | 0 |
| eatwave Dunkin' Zero - Large | Large | 30 | 0 | 0 | 0 | 0 | 250 | 13 | 0 | 0 | 0 | 0 | 0 | 46 | 10 | 0 |
| eatwave Dunkin' Zero - Medium | Medium | 20 | 0 | 0 | 0 | 0 | 190 | 10 | 0 | 0 | 0 | 0 | 0 | 34 | 7 | 0 |
| eatwave Dunkin' Zero - Small | Small | 15 | 0 | 0 | 0 | 0 | 125 | 6 | 0 | 0 | 0 | 0 | 0 | 23 | 5 | 0 |
| icy Peach Dunkin' Zero - Large | Large | 25 | 0 | 0 | 0 | 0 | 250 | 11 | 1 | 1 | 0 | 0 | 0 | 46 | 11 | 0 |
| icy Peach Dunkin' Zero - ledium | Medium | 20 | 0 | 0 | 0 | 0 | 190 | 8 | 1 | 0 | 0 | 0 | 0 | 34 | 7 | 0 |
| icy Peach Dunkin' Zero - Small | Small | 10 | 0 | 0 | 0 | 0 | 125 | 6 | 1 | 0 | 0 | 0 | 0 | 23 | 5 | 0 |
| lelon Deuce Energy - Large | Large | 250 | 0 | 0 | 0 | 0 | 270 | 66 | 0 | 49 | 49 | 0 | 0 | 66 | 24 | 0 |
| lelon Deuce Energy - Medium | Medium | 180 | 0 | 0 | 0 | 0 | 200 | 49 | 0 | 37 | 37 | 0 | 0 | 49 | 17 | 0 |
| lelon Deuce Energy - Small | Small | 120 | 0 | 0 | 0 | 0 | 135 | 33 | 0 | 25 | 25 | 0 | 0 | 33 | 12 | 0 |
| lelon Paradise Dunkin' Zero - arge | Large | 30 | 0 | 0 | 0 | 0 | 250 | 13 | 0 | 0 | 0 | 0 | 0 | 46 | 10 | 0 |
| lelon Paradise Dunkin' Zero - | Medium | 20 | 0 | 0 | 0 | 0 | 190 | 10 | 0 | 0 | 0 | 0 | 0 | 34 | 7 | 0 |

*Dunkin' Nutrition Guide (Aug. 19, 2026), at 7 (excerpt)*

## C. Allulose Is a Sugar

28. Allulose is a sugar.

29. Chemically, allulose is a monosaccharide. It is the C-3 epimer of D-fructose, meaning that allulose and fructose have the same molecular formula and connectivity but differ in the spatial orientation of a hydroxyl group at the third carbon. "D-allulose, a C-3 epimer of D-fructose, is a rare monosaccharide used as a food ingredient or a sweetener."[13] Allulose is accordingly "a rare sugar," and "a monosaccharide that is low in calories and that maintains approximately 70% of sweetness relative to sugar."[14]

30. Allulose is not merely a sugar as a matter of chemical classification. It is used as one. Allulose has "70% of the sweetness of sucrose, which means it is viewed as a potential alternative sweetener."[15] The food science literature describes allulose and other rare sugars as "monosaccharides with sweetness similar to those as caloric sugars, but [with] low caloric values."[16]

---

[13] Han-Joo Maeng *et al.*, *Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol*, 8 FOODS ART. 448, at 1 (2019), https://doi.org/10.3390/foods8100448.

[14] Youngji Han *et al.*, *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*, 10 NUTRIENTS ART. 2010, at 1–2 (2018), https://doi.org/10.3390/nu10122010.

[15] Maeng *et al.*, *supra* note 13, at 2.

[16] *Id.*

31. Because allulose is less sweet than traditional table sugar, it is used in gram-scale quantities as a bulk sweetener. High-intensity sweeteners such as saccharin, aspartame, acesulfame potassium, neotame, sucralose, and advantame are approximately 200 to 20,000 times as sweet as sucrose.[17] By contrast, allulose has approximately 70% of sucrose's sweetness and, as Defendants' own ingredient and nutrition information shows, is used in large quantities as a bulk sweetener.[18] Defendants use steviol glycosides, a high-intensity sweetener, only as a minor ingredient present at 2% or less; allulose does the sweetening.

32. Allulose also behaves like sugar in food. "It is convenient for the food industry to use D-allulose, as its chemical properties are similar to those of fructose in terms of solubility, water activity, and viscosity."[19] It is used as "a partial replacement of added sugars."[20]

33. The Food and Drug Administration ("FDA") identifies allulose as a sugar. In its 2016 Nutrition Facts rulemaking, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[21] The current regulation continues to define Total Sugars as "the sum of all free mono- and disaccharides" and does not exclude allulose. 21 C.F.R. § 101.9(c)(6)(ii).

34. The Calorie Control Council, a trade association for the low-calorie food and beverage industry, likewise describes allulose under the heading "Allulose is a Naturally

---

[17] U.S. FOOD & DRUG ADMINISTRATION, *Aspartame and Other Sweeteners in Food*, https://www.fda.gov/food/food-additives-petitions/aspartame-and-other-sweeteners-food (last visited Sept. 23, 2026).

[18] Mengting Tao, Wenli Zhang & Wanmeng Mu, *D-Allulose: A New Generation of Potential Bulk Sweeteners in the Food Industry*, 73 J. AGRIC. & FOOD CHEM. 27,833, 27,833–35 (2025) (Viewpoint), https://doi.org/10.1021/acs.jafc.5c13620.

[19] Han *et al.*, *supra* note 14, at 10.

[20] *Id.*

[21] FOOD LABELING: *Revision of the Nutrition and Supplement Facts Labels*, 81 Fed. Reg. 33,742, 33,796 (May 27, 2016).

Occurring Sweetener" and states that "[a] monosaccharide, or simple sugar, allulose is absorbed by the body, but not metabolized, so it is nearly calorie-free."[22]

35. The United States Court of Appeals for the Seventh Circuit recently confirmed the point in *Franco v. Chobani, LLC*, a case challenging "sugar free" claims on yogurt sweetened with allulose. *Franco v. Chobani, LLC*, 184 F.4th 599 (7th Cir. 2026), *rev'g* 789 F. Supp. 3d 584 (N.D. Ill. 2025). Holding that allulose "is a sugar under the relevant federal regulation," the court explained that "[t]here's no dispute that allulose is a monosaccharide," and "[b]ecause the definition includes every monosaccharide and the following parenthetical is merely a list of examples, allulose is a sugar under § 101.9(c)(6)(ii)." *Id.* at 602, 604. The FDA itself, appearing as *amicus curiae*, agreed that the regulation is unambiguous and that total sugars include all monosaccharides, including allulose. *Id*. at 604.

**D. The Zero Sugar Representations Violate the FDA Nutrient Content Regulations**

36. Congress empowered FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 *et seq*. The FDA promulgated the relevant food-labeling regulations in 21 C.F.R. Part 101.

37. A food is misbranded if its labeling is false or misleading in any particular, 21 U.S.C. § 343(a)(1), or if its label or labeling bears a claim that characterizes the level of a nutrient unless the claim uses terms defined in FDA regulations and complies with those definitions. 21 U.S.C. § 343(r)(1)(A), (r)(2)(A)(i).

38. FDA regulations distinguish information appearing within required nutrition labeling from statements appearing elsewhere. Information within the nutrition labeling is not

---

[22]Calorie Control Council, *Allulose*, https://caloriecontrol.org/ingredients/sweeteners/allulose/ (last visited Sept. 23, 2026).

itself a nutrient content claim, but the same information placed outside that labeling—on a menu board, a website, a product name, or an advertisement—is subject to the nutrient-content-claim regulations. 21 C.F.R. § 101.13(c). The challenged Zero Sugar Representations appear outside any nutrition labeling and expressly represent that the Products contain no sugar. They are therefore expressed nutrient content claims. 21 C.F.R. § 101.13(b)(1), (c).

39. Dunkin' is a restaurant chain with more than 20 locations doing business under the same name and offering substantially the same menu items, and is therefore a "covered establishment" subject to FDA's menu-labeling requirements. 21 U.S.C. § 343(q)(5)(H); 21 C.F.R. § 101.11. Nutrient content claims made for restaurant foods must comply with the nutrient-content-claim regulations, including 21 C.F.R. § 101.60. 21 C.F.R. § 101.13(q)(5). A restaurant may make such a claim only if it has a reasonable basis for concluding that the food meets the definition for the claim. *Id.*

40. Section 101.60(c)(1) governs the use of "sugar free" and its synonyms, and expressly lists "zero sugar" among them. It provides in relevant part that "[u]se of terms such as 'sugar free,' 'free of sugar,' 'no sugar,' 'zero sugar,' 'without sugar,' 'sugarless,' 'trivial source of sugar,' 'negligible source of sugar,' or 'dietarily insignificant source of sugar'" is permitted only if each of the following conditions is met:

(i) "The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of sugars per labeled serving"; and

(ii) "The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states 'adds a trivial amount of sugar,' 'adds a negligible amount of sugar,' or 'adds a dietarily insignificant amount of sugar'"; and

> (iii) The food is labeled "low calorie" or "reduced calorie" or bears a qualifying relative claim, or, alternatively, bears a disclaimer such as "not a low calorie food" or "not for weight control."

21 C.F.R. § 101.60(c)(1)(i)–(iii).

41. These requirements are conjunctive; each one must be satisfied.

42. The Products do not comply with these regulations. Subsection (i) cross-references 21 C.F.R. § 101.9(c)(6)(ii), which provides that "[t]otal sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Allulose, as a monosaccharide epimer of fructose, falls squarely within that definition. Because each Product contains approximately 9 grams or more of allulose per serving—more than sixteen times the 0.5-gram threshold—the Zero Sugar Representations do not comply with § 101.60(c)(1)(i).

43. The Products also fail subsection (ii). Each Product contains an ingredient that is a sugar—allulose—and Defendants' ingredient statement does not follow the listing of allulose with an asterisk or any statement that it adds a trivial, negligible, or dietarily insignificant amount of sugar. To the contrary, Defendants' own internal name for the allulose-sweetened syrup is "Blackberry Tango Energy Zero Sugar Flavored Syrup."

44. The Zero Sugar Representations also violate § 101.13(b)(4), which permits reasonable variations and synonyms of defined nutrient content terms only if they are not misleading. "0g of sugar" and "zero grams of sugar" are variations of the defined term "zero sugar," and they are misleading for the reasons stated herein.

45. FDA's nonbinding allulose guidance does not authorize the challenged claims. The guidance announces enforcement discretion, pending rulemaking, for excluding allulose from the gram amounts of Total Sugars and Added Sugars declared on Nutrition and Supplement Facts labels. It does not amend § 101.9(c)(6)(ii), address § 101.60(c)(1), or purport to authorize a

separate "zero sugar" or "0g of sugar" nutrient content claim on a menu board, product name, or advertisement.[23] As the Seventh Circuit explained in rejecting the same defense in *Franco*, the guidance "isn't an interpretation of § 101.9(c)(6)(ii)—it's an announcement of a change in enforcement policy," and "the fact that one sovereign (the United States) indicated that it would not enforce" the regulation "should not have led [the defendant] to believe that the states would take a similar approach." 184 F.4th at 606. Moreover, no rulemaking has issued in the six years since the FDA's nonbinding guidance was published.

46. Because Defendants add approximately 9 grams or more of allulose to each Product while marketing the Products with false, misleading, and impermissible nutrient content claims, the Products are misbranded under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (b)(4), (c), (q)(5), and 101.60(a)(1)–(3), (c)(1). Plaintiff does not seek to enforce the FDCA directly. She seeks relief under independently enforceable state consumer-protection and common law, which adopts requirements identical to the federal food-labeling requirements and independently prohibits deceptive representations, and she independently alleges that the Zero Sugar Representations have the capacity to mislead reasonable consumers. Because Illinois and Massachusetts law impose requirements identical to the federal requirements, Plaintiff's claims are not preempted. 21 U.S.C. § 343-1(a)(5); *Franco*, 184 F.4th at 606.

**E. Defendants' Conduct Violates Illinois Law**

47. The Illinois Consumer Fraud and Deceptive Business Practices Act declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise,

---

[23] U.S. FOOD & DRUG ADMINISTRATION, *The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry* 1, 8–9 (Oct. 2020), https://www.fda.gov/media/123342/download (last visited Sept. 23, 2026).

misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce," and provides that such practices are unlawful "whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.[24]

48. Illinois independently prohibits the misbranding of food. Under the Illinois Food, Drug and Cosmetic Act, a food is misbranded "[i]f its labeling is false or misleading in any particular." 410 ILCS 620/11(a).

49. Because the Products bear "zero sugar" and "0g of sugar" nutrient content claims despite Defendants' addition of approximately 9 grams or more of allulose to each Product, the Products are misbranded and deceptively marketed under Illinois law, and Defendants' marketing and sale of the Products in Illinois are deceptive and unfair acts and practices within the meaning of 815 ILCS 505/2. The parallel federal standards are 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (b)(4), (c), (q)(5), and 101.60(a)(1)–(3), (c)(1).

50. Independent of any regulation, the Zero Sugar Representations are likely to mislead reasonable consumers. "Zero sugar" and "0g of sugar" are absolute, categorical promises. A reasonable consumer understands them to mean that the Product contains no sugar—not that it contains approximately 9 grams of a monosaccharide that is, by any chemical or regulatory measure, a sugar. That deception is material: it goes to the very characteristic for which the Products are named and marketed and for which consumers select them. The Seventh Circuit, reviewing materially identical "sugar free" claims on a product sweetened with allulose, held that consumer deception was plausibly alleged "given the absolute promise on Chobani's

---

[24] *See also* 815 ILCS 505/1(c), (e), (f) (defining "person," "consumer," and "trade" and "commerce," the latter to include "the advertising, offering for sale, sale, or distribution of any services and any property . . . and shall include any trade or commerce directly or indirectly affecting the people of this State"); 815 ILCS 505/11a (the Act "shall be liberally construed to effect the purposes thereof").

products (sugar free)," and explained that "[w]hether reasonable consumers care about the existence of allulose in their yogurt isn't the same thing as asking whether reasonable consumers would be deceived by it." *Franco*, 184 F.4th at 608.

**F. Defendants Knew the Zero Sugar Representations Were False**

51. Defendants knew, or should have known, that the Zero Sugar Representations were false or misleading when they formulated, named, marketed, and sold the Products. Specifically, Defendants knew that: (a) the Products contain allulose; (b) allulose is a free monosaccharide and a sugar; (c) Defendants add approximately 9 grams or more of allulose to each Product as its principal sweetener; (d) Defendants' menu boards, signage, websites, press releases, advertising, and the Product name nevertheless represent that the Products contain "zero sugar" and "0g of sugar"; (e) reasonable consumers would rely on the Zero Sugar Representations when purchasing; (f) consumers would not receive the represented benefit of the bargain; and (g) the Zero Sugar Representations enabled Defendants to charge a premium and to take sales from truthfully labeled competitors.

52. Defendants formulate the Products and control the ingredient statement, nutrition information, product name, and marketing. Defendants list allulose as the first ingredient of each flavored syrup after water, declare 9 to 13 grams of carbohydrate per serving attributable to allulose, and yet print the Zero Sugar Representations prominently across every channel through which the Products are sold. Those facts demonstrate that Defendants knew the Products contained added allulose while making the challenged representations. Defendants' conduct was willful, wanton, and in reckless disregard of the rights of consumers.

53. Defendants could have refrained from using the Zero Sugar Representations, accurately qualified them, reformulated the Products, or truthfully marketed the Products as "no added sugar" only if they qualified for that claim—but chose not to.

**G. Defendants' Zero Sugar Representations Injured Plaintiff and the Classes**

54. Defendants concealed or failed to disclose material facts about the Products, including: (a) that allulose is a free monosaccharide and sugar; (b) that Defendants add it to the Products as the principal sweetener; (c) that the Products do not comply with pertinent FDA regulations that Illinois law adopts; (d) that the Products do not conform to the Zero Sugar Representations; and (e) that the Products are misbranded under federal and Illinois law as a result of the Zero Sugar Representations.

55. As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and Class Members in that they: (a) paid money for Products that were not as represented; (b) paid a premium for the Products; (c) were deprived of the benefit of their bargains; and (d) purchased misbranded Products that could not lawfully have been sold as represented.

56. Accordingly, Plaintiff and Class Members suffered injury in fact and lost money or property because of Defendants' wrongful conduct. Plaintiff and each Class Member received a Product worth less than the Product for which they paid, and suffered a distinct, economic injury that is separate from the violation itself.

**H. Plaintiff Lacks an Adequate Remedy at Law for Prospective Harm**

57. Plaintiff lacks an adequate remedy at law for the future harm described above. Damages cannot remedy her inability to rely on Defendants' Zero Sugar Representations when deciding whether to purchase the Products in the future. Only injunctive relief requiring Defendants to cease or correct the misleading Zero Sugar Representations can address that prospective harm.

58. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices

Plaintiff and Class Members paid and the value of the Products as received, which may not be coextensive with damages.

## CLASS ACTION ALLEGATIONS

59. Plaintiff brings this action on behalf of herself and all others similarly situated under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3). The proposed classes are defined below (collectively, the "Classes"):

**Nationwide Class:** All persons in the United States who, from March 4, 2026 through the date of class certification, purchased one or more of the Products from a Dunkin' restaurant for personal, family, or household use.

**Illinois Subclass:** All persons who, from March 4, 2026 through the date of class certification, purchased one or more of the Products from a Dunkin' restaurant located in Illinois for personal, family, or household use.

60. The Classes do not include: (1) Defendants, their parents, subsidiaries, affiliates, officers, directors, employees, and franchisees; (2) the Judge or Magistrate Judge assigned to this action and the assigned Judge's or Magistrate Judge's staff and family; or (3) Plaintiff's counsel or Defendants' counsel.

61. Plaintiff reserves the right to amend the class definitions and add classes or subclasses, including multi-state subclasses to account for material differences in state law, if any, as appropriate based on investigation, discovery, and the specific theories of liability.

62. **Numerosity:** While the exact number of Class Members is unknown to Plaintiff and can be determined only through discovery, the Products are sold at approximately 10,000 Dunkin' restaurants nationwide and, upon information and belief, Class Members number in the hundreds of thousands, and joinder is impracticable. Class Members may be identified and notified through Defendants' and their franchisees' transaction, payment-card, loyalty-program, and mobile-ordering records, and by publication.

63. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual members. Defendants' Zero Sugar Representations are uniform: every Product is sold under the same "Dunkin' Zero" name and with the same "zero sugar" and "0g of sugar" claims, disseminated from Defendants' Massachusetts headquarters to every Dunkin' restaurant. These common legal and factual questions include, but are not limited to:

(a) Whether allulose is a free monosaccharide and sugar;

(b) Whether the Products contain allulose and fail the governing conditions for the Zero Sugar Representations, including 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (b)(4), (c), (q)(5), and 101.60(a)(1)–(3), (c)(1);

(c) Whether the Zero Sugar Representations have the capacity or tendency to deceive reasonable consumers;

(d) Whether Defendants' representations were material;

(e) Whether Defendants' conduct constitutes deceptive or unfair acts or practices in violation of 815 ILCS 505/2;

(f) Whether Defendants breached an express warranty;

(g) Whether Defendants were unjustly enriched as a result of the conduct alleged in this Complaint;

(h) Whether Plaintiff and Class Members suffered damages as a result of Defendants' actions, and the amount of those damages, including the price premium attributable to the Zero Sugar Representations;

(i) Whether Defendants' conduct was willful, wanton, or in reckless disregard of the rights of consumers; and

(j) Whether Plaintiff and Class Members are entitled to attorneys' fees and costs and to injunctive relief.

64. With respect to the Illinois Subclass, additional questions of law and fact common to the members include whether Defendants' conduct occurred primarily and substantially in Illinois and whether Plaintiff and Illinois Subclass Members are entitled to punitive damages under 815 ILCS 505/10a(a).

65. **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff was exposed to Defendants' uniform Zero Sugar Representations, purchased the Products in reliance on them, and suffered the same type of economic loss.

66. **Adequacy:** Plaintiff will fairly and adequately represent and protect the Classes' interests as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiff has no interests adverse to the Classes, is committed to vigorous prosecution, and has retained counsel skilled and experienced in consumer class action litigation.

67. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the asserted claims under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual litigation make it economically infeasible for Class Members, whose individual purchases cost a few dollars each, to seek redress outside a class action. Even if Class Members could afford individual litigation, the burden on the courts would be substantial. Individualized litigation would risk varying or contradictory judgments and magnify delay and expense through repeated trials of the same factual issues. By contrast, maintaining this action as a class action presents fewer management difficulties, conserves party and judicial resources, and protects each Class Member's rights. Plaintiff anticipates no difficulty managing this action as a class action. Classwide relief is essential to compel compliance with applicable consumer-protection laws, and separate actions could subject Defendants to inconsistent obligations.

68. **Injunctive and Declaratory Relief:** Defendants have acted and refused to act on grounds generally applicable to the Classes, making final injunctive and declaratory relief appropriate with respect to the Classes as a whole under Federal Rule of Civil Procedure

23(b)(2). Defendants continue to market and sell the Products with the Zero Sugar Representations.

## CAUSES OF ACTION

### COUNT I
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1 et seq.**
**(On Behalf of Plaintiff and the Illinois Subclass)**

69. Plaintiff incorporates by reference and re-alleges the allegations in paragraphs 1 through 68 of this Complaint.

70. Plaintiff brings this claim individually and on behalf of the Illinois Subclass against Defendants.

71. Plaintiff and Illinois Subclass Members are “consumers” and “persons,” the Products are “merchandise,” and Defendants' advertising, offering for sale, and sale of the Products constitute “trade” or “commerce,” within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act (“ICFA”) 815 ILCS 505/1.

72. The ICFA prohibits “unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce.” 815 ILCS 505/2.

73. Defendants engaged in deceptive acts and practices in violation of the ICFA by representing, through the Product name, their menu boards and signage, their website, and their advertising, that the Products contain zero sugar and 0 grams of sugar when they contain approximately 9 grams or more of allulose, a sugar, and by concealing, suppressing, and omitting

the material fact that the Products are sweetened with a sugar. Those representations and omissions were literally false or, at a minimum, likely to mislead reasonable consumers.

74. Defendants intended that Plaintiff and Illinois Subclass Members rely on the Zero Sugar Representations and on their omission of the fact that the Products contain a sugar. Defendants named the Products “Dunkin' Zero,” launched them as “zero-sugar” energy drinks, and placed the “0g of sugar” claim in every channel through which the Products are marketed precisely so that consumers seeking to avoid sugar would purchase them.

75. Defendants' conduct also constitutes an unfair practice within the meaning of the ICFA because it offends the public policy of Illinois and the United States as embodied in 410 ILCS 620/11(a), 21 U.S.C. § 343(a)(1), (r)(1)(A), and 21 C.F.R. § 101.60(c)(1); is immoral, unethical, oppressive, and unscrupulous, in that Defendants sell a sugar-sweetened beverage under a name and claim that promise no sugar; and causes substantial injury to consumers, who pay for a product that is not what it is represented to be and cannot reasonably avoid the injury because the truth is known only to Defendants.

76. Defendants' deceptive and unfair acts and practices occurred in the course of conduct involving trade or commerce and occurred primarily and substantially in Illinois with respect to Plaintiff and the Illinois Subclass, each of whom saw the Zero Sugar Representations at, purchased the Products from, and paid for the Products at Dunkin' restaurants located in Illinois.

77. No statute or regulation specifically authorizes Defendants to represent that a beverage containing approximately 9 grams of allulose per medium serving contains “zero sugar” or “0g of sugar,” and the exemption in 815 ILCS 505/10b(1) does not apply.[25]

---

[25]The exemption in 815 ILCS 505/10b(1) for “[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States” does not apply.

78. As a direct and proximate result of Defendants' deceptive and unfair acts and practices, Plaintiff and Illinois Subclass Members suffered actual damage, in that they purchased Products they would not otherwise have purchased, or paid a price premium for Products that were not as represented, and received Products worth less than the Products they were promised.

79. Defendants' conduct was willful and wanton and undertaken with reckless disregard for the rights of consumers, in that Defendants knew from their own formulation, ingredient statements, and carbohydrate declarations that the Products are sweetened with a sugar and nevertheless marketed them as containing none.

80. Pursuant to 815 ILCS 505/10a, Plaintiff and Illinois Subclass Members are entitled to actual damages, punitive damages, injunctive relief requiring Defendants to cease the Zero Sugar Representations, and reasonable attorneys' fees and costs.

## COUNT II
**Breach of Express Warranty**
**Mass. Gen. Laws ch. 106, §§ 2-313 and 2-318**
**(On Behalf of Plaintiff and the Nationwide Class)**

81. Plaintiff incorporates by reference and re-alleges the allegations in paragraphs 1 through 68 of this Complaint.

82. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendants under Massachusetts law.

83. Defendants are merchants with respect to the sale of the Products, and the Products are "goods" within the meaning of Mass. Gen. Laws ch. 106, § 2-105.

---

No statute or regulation authorizes a "zero sugar" or "0g of sugar" claim for a food containing more than 0.5 grams of sugars; the governing regulation, 21 C.F.R. § 101.60(c)(1), forbids it. FDA's 2020 allulose guidance is a nonbinding statement of enforcement discretion concerning the Nutrition Facts panel, not an authorization of nutrient content claims. *See Franco*, 184 F.4th at 606 (guidance "isn't an interpretation of § 101.9(c)(6)(ii)—it's an announcement of a change in enforcement policy," and federal non-enforcement "should not have led Chobani to believe that the states would take a similar approach").

84. Through the Product name and the Zero Sugar Representations on their menu boards, signage, websites, and advertising, Defendants made affirmations of fact and promises to Plaintiff and Class Members that the Products contain zero sugar and 0 grams of sugar, and described the Products as zero-sugar beverages. Those affirmations, promises, and descriptions related to the goods and became part of the basis of the bargain, creating express warranties that the Products would conform to them. Mass. Gen. Laws ch. 106, § 2-313(1)(a)–(b).

85. Defendants breached those express warranties because the Products do not conform to the affirmations, promises, and descriptions: each Product contains approximately 9 grams or more of allulose, a sugar.

86. Plaintiff and Class Members are persons whom Defendants might reasonably have expected to use, consume, or be affected by the Products, and lack of privity is no defense to this claim. Mass. Gen. Laws ch. 106, § 2-318.

87. Plaintiff provided Defendants with notice of the breach within a reasonable time after discovering it, including by written demand and by the filing of this Complaint. Defendants have also been on notice of the falsity of the Zero Sugar Representations by virtue of their own ingredient and nutrition information, the FDA's 2016 rulemaking, and the Seventh Circuit's 2026 decision in *Franco v. Chobani, LLC*, 184 F.4th 599. In any event, any failure to give notice does not bar recovery because Defendants have not been and cannot be prejudiced thereby. Mass. Gen. Laws ch. 106, § 2-318.

88. As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and Class Members have been damaged in an amount to be determined at trial, including the difference between the value of the Products as warranted and the value of the Products as delivered. Mass. Gen. Laws ch. 106, § 2-714.

## COUNT III
**Negligent Misrepresentation**
**(On Behalf of Plaintiff and the Nationwide Class)**

89. Plaintiff incorporates by reference and re-alleges the allegations in paragraphs 1 through 68 of this Complaint.

90. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendants under Massachusetts law.

91. In the course of their business, Defendants supplied false information for the guidance of consumers in their purchasing decisions, namely, that the Products contain zero sugar and 0 grams of sugar.

92. Defendants failed to exercise reasonable care or competence in obtaining and communicating that information. Defendants formulated the Products with allulose, knew or should have known that allulose is a monosaccharide sugar, and had ready access to the FDA's regulations and rulemaking record identifying allulose as a sugar, yet represented that the Products contain no sugar.

93. Defendants intended that Plaintiff and Class Members rely on the Zero Sugar Representations in deciding to purchase the Products, and Plaintiff and Class Members justifiably relied on them. Defendants' uniform representations were of a kind that reasonable consumers would rely upon, and Plaintiff and Class Members would not have purchased the Products, or would have paid less for them, had they known the truth.

94. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and Class Members suffered pecuniary loss, including the purchase price or price premium paid for the Products, in an amount to be determined at trial.

## COUNT IV
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class, in the Alternative)**

95. Plaintiff incorporates by reference and re-alleges the allegations in paragraphs 1 through 68 of this Complaint.

96. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendants under Massachusetts law.

97. Plaintiff asserts this cause of action in the alternative to her legal claims, as permitted by Federal Rule of Civil Procedure 8(d)(2)–(3), to the extent that any legal remedy is held to be unavailable to Plaintiff or any Class Member.

98. Plaintiff and Class Members conferred a benefit on Defendants in the form of the purchase price, including a price premium, paid for the Products, which Defendants received directly or through their franchisees and affiliates in the form of revenue, royalties, and fees calculated on the sale of the Products.

99. Defendants knowingly accepted and retained that benefit under circumstances that make it inequitable for Defendants to retain it without payment of its value, because Defendants obtained the benefit through the false and misleading Zero Sugar Representations.

100. Defendants have been unjustly enriched at the expense of Plaintiff and Class Members in an amount to be determined at trial, and Plaintiff and Class Members are entitled to restitution and disgorgement of that unjust benefit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants as follows:

a) For an order certifying the Classes under Fed. R. Civ. P. 23, naming Plaintiff as representative of the Classes, and appointing Plaintiff's counsel as Class Counsel;

b) For an order declaring that Defendants' conduct violates the statutes and regulations referenced herein;

c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d) For actual damages under the asserted causes of action, and punitive damages under 815 ILCS 505/10a(a);

e) For restitution and disgorgement to the extent permitted by applicable law;

f) For injunctive relief as pleaded or as the Court may deem proper, including an order requiring Defendants to cease marketing and selling the Products with the Zero Sugar Representations and to make affirmative disclosures sufficient to dispel the public misperception created by Defendants' conduct;

g) For prejudgment and post-judgment interest on all amounts awarded;

h) For an order awarding Plaintiff's and the Classes' reasonable attorneys' fees, expenses, and costs of suit, including under 815 ILCS 505/10a(c); and

i) For such other and further relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: September 29, 2026

Respectfully submitted,

**PATTON LEGAL, P.C.**
By: */s/ Matthew D. Patton*
Matthew D. Patton (BBO 703798)
161 Savin Hill Ave.
Boston, MA 02125
Telephone: (617) 453-3693
Email: mpatton@pattonlegalpc.com

**STRAUSS BORRELLI PLLC**
Raina C. Borrelli (*pro hac vice* forthcoming)
Samuel J. Strauss (*pro hac vice* forthcoming)
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
E-mail: raina@straussborrelli.com
sam@straussborrelli.com

**LEVIN LAW, P.A.**
Brian Levin (*pro hac vice* forthcoming)
Florida Bar No. 26392
2665 South Bayshore Drive, PH2B
Miami, Florida 33133
Telephone: (305) 402-9050
E-mail: brian@levinlawpa.com

*Counsel for Plaintiff and the Proposed Classes*